**UNITED STATES of America**

**v.**

**Henry SAUNDERS.**

**Crim. No. 90–00074–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 9, 1990.

As Revised May 16, 1990.

W. Neil Hammerstrom, Jr., Asst. U.S. Atty., Alexandria, Va., for U.S.

Drewry B. Hutcheson, Jr., Alexandria, Va., for Henry Saunders.

## MEMORANDUM OPINION

ELLIS, District Judge.

Defendant stands accused of rape. The indictment charges that he unlawfully, knowingly, and willingly caused another person to engage in a sex act by using force and threats to place that person in fear of death or serious bodily injury, in violation of 18 U.S.C. § 2241(a). Pursuant to Rule 412(c)(1), Fed.R.Evid., defendant filed the requisite timely Motion for Leave to Offer Certain Evidence Concerning the Victim's Past Sexual Behavior. Specifically, the motion set forth defendant's intention to offer the following evidence:

(1) Defendant's testimony that he had sexual relations with the alleged victim on a number of occasions prior to the alleged rape;

(2) Defendant's testimony, and that of an acquaintance, as to specific occasions on which the acquaintance had sex

with the alleged victim and related this fact to the defendant prior to the alleged incident that is the basis of the indictment.

The first category of evidence, according to defendant, is offered on the issue of consent, while the second is offered on defendant's state of mind.[1]

Because these matters fell, in part, within Subdivision (b) of the Rule, the Court held an *in camera* hearing to determine the admissibility of the evidence. Only the defendant, the alleged victim, and an FBI agent testified. The Court then took the matter under advisement. Thereafter, the Court reopened the Rule 412 hearing, noting that the record did not disclose whether defendant's Rule 412 motion had been served on the alleged victim as required by subsection (c)(1) of the Rule. Also, consistent with *In re McDaniel*, 861 F.2d 714 (4th Cir.1988) (unpublished opinion), the Court appointed counsel for the alleged victim to ensure that her position would be properly presented and advocated. At the reopened hearing, all counsel, including the alleged victim's counsel, presented arguments, but declined the opportunity to present any additional testimony.

The pertinent facts are easily summarized. Defendant and the alleged victim have known each other since their teen-age years. Defendant testified he had sex with the alleged victim about half a dozen times during the period spanning 1983 to 1987. From 1987 to the alleged incident on February 9, 1990, defendant saw the alleged victim on only a couple of occasions, none of which involved sex. The alleged victim, by contrast, denies ever having had sex with defendant, except on the night of the alleged incident. The alleged victim also testified that at the time of the alleged rape, she was engaged to a man by whom she had borne two children. The FBI agent testified that defendant, when interviewed prior to his arrest, claimed to have had sex with the alleged victim on only two prior occasions.

From the parties' proffers, it appears, not surprisingly, that their versions of the evening's events sharply conflict. Defendant contends that consensual sexual relations occurred at his home early in the evening, coupled with illegal drug use. The alleged victim denies any consensual sex and claims instead that defendant coerced her to have sex with him when he was driving her home. Defendant allegedly accomplished the coercion by driving to a secluded area, brandishing a tool or pipe, grabbing the alleged victim by the throat and threatening her with serious bodily injury unless she submitted.

At the first *in camera* hearing, defendant called an acquaintance as a witness. The acquaintance's testimony, distilled to its essence, was that in the week prior to the alleged incident, the acquaintance had consensual sexual relations with the alleged victim over a three-day period and told defendant about it before the alleged incident. Defendant claims this testimony should be admitted because it bears on his state of mind. The alleged victim denied ever having had sex with the acquaintance.

■■■ This, then, is the factual record before the Court in connection with defendant's Rule 412 motion. At the outset, it is important to note that the Court declines the government's invitation to resolve the motion by making witness credibility judgments or by rejecting certain inferences invited by arguably ambiguous testimony. For example, the government attacked the credibility of defendant's acquaintance and urged the Court to conclude that the witness' testimony that "I had her" and "I had her home for three days" did not necessarily mean that sexual relations occurred. The government also attacked defendant's credibility by presenting the FBI agent's testimony concerning defendant's prior inconsistent statement regarding the number of instances of sex defendant had with the alleged victim in the past. Although the government ultimately abandoned this line of argument, its invalidity is worth con-

---

**1.** Such specificity of purpose is clearly required by the Rule. *United States v. Nez,* 661 F.2d 1203 (10th Cir.1981) (evidence of complainant's past sexual behavior held inadmissible under Rule 412 where defendant failed to establish a proper purpose.)

firming. Except perhaps in extreme circumstances, not present here, courts are not free to make Rule 412 rulings on the basis of credibility judgments. Those judgments are for the jury or ultimate factfinder. Instead, courts must consider and resolve issues under Rule 412 without regard to whether a jury or factfinder will ultimately accept or reject all or part of the testimony.[2] Nor may courts considering a Rule 412 motion reject inferences reasonably permitted by the testimony or resolve testimonial ambiguities to foreclose such inferences. These, too, are the province of the jury. With this as background, the Court turns next to an analysis of the knotty Rule 412 issues presented in the case at bar.

*Analysis*

■ Analysis appropriately begins with recognition of Rule 412's policy underpinnings. Fundamental to Rule 412 is the notion that the law protects women[3] from forced sexual contact and that this protection extends to all persons even though their past sexual behavior or reputation suggests they are less than virtuous. Put succinctly, the law recognizes that even women of easy virtue may also be victims of rape and deserve the full protection of the law. Too often, rape trials have wrongly focused on the past sexual behavior and promiscuous reputation of alleged victims, as if to say to the jury that such persons, as a result of their past sexual behavior or reputation, cannot validly withhold consent. *See e.g.*, S. Maxwell, *Criminal Procedure* 248 (1896) ("The previous conduct of the prosecutrix, as to whether or not she had connection with other men, is a proper subject of inquiry, as tending to show a want of chastity, and therefore that

she would be more likely to consent than a virtuous woman ...")[4] Rule 412 flatly rejects this notion; instead, it recognizes that whether a woman has consented once or myriad times, and whether she has done so for love or money, she is, in any event, entitled by law to be free from nonconsensual sexual contact. A woman's past behavior, however unchaste, confers on no one a license to commit rape.

■ At the same time, however, Rule 412 also recognizes the perplexing ambiguities that often surround rape allegations. Accordingly, the Rule recognizes that there may be special circumstances where the alleged victim's past sexual behavior may play a role in ascertaining whether the crime of rape occurred. To this end, the rule carves out two specific exceptions. The first pertains to evidence of the alleged victim's past sexual behavior with the accused offered solely on the issue of consent. The second concerns evidence of the victim's past sexual behavior with other persons and is limited to those cases where it is relevant to whether the accused was the source of semen or injury to the alleged victim. Even evidence falling within the two exceptions may not be admissible if the court determines that it is not relevant or that its probative value is outweighed by its unfair prejudicial effect. *See* Rule 412(c)(3). Finally, quite apart from the two special exceptions, Rule 412 necessarily recognizes that the admissibility of certain evidence may be constitutionally mandated even if neither exception applies. Thus, analysis under Rule 412 appropriately begins with a consideration of whether the proffered evidence falls within either of the two exceptions of the Rule. If so, the Court must still examine the evidence to

---

**2.** One commentator suggests that Rule 412(c)(2) risks infringing on defendants' jury trial right because it may require judges to make credibility determinations as a predicate for determining the relevance of offered evidence. G. Joseph and S. Saltzburg, *Evidence in America—The Federal Rules in the States* § 412–5 (1987). No such infringement occurred in this case.

**3.** The law protects men as well, as it refers generically to "person." 18 U.S.C. § U.S.C. § 2241(a); *see also* J. Weinstein, *Weinstein's Evidence* § 412–12 (1989) ("While some of the Congressional discussion suggests that the bill protects only female victims, the bill itself is stated generally to protect male victims of rape where such a crime has been charged."). But since the victim in the instant case is a woman, the discussion here refers only to female victims.

**4.** It is illuminating that the Court has found no similar statements asserting the lack of credibility of promiscuous men by virtue of their promiscuity.

determine whether it is relevant and whether its probative value outweighs the danger of unfair prejudice. The evidence is admissible if it falls within the exceptions and its probative value outweighs the danger of any unfair prejudicial effect it may have. But, even if the evidence does not fall within the Rule's two exceptions, the court must still consider whether its admissibility is constitutionally required. Finally, in this Circuit, Rule 412 is not a bar to evidence of the alleged victim's past sexual behavior where that evidence is offered to show the accused's state of mind. But even in this event, admissibility still hinges on whether the evidence passes muster under Rule 403, Fed.R.Evid. *See Doe v. United States,* 666 F.2d 43 (4th Cir.1981). With this blueprint for analysis in mind, the Court turns next to an examination of the two categories of evidence offered by defendant in this case.

### A. *The Alleged Victim's Past Sexual Behavior With Defendant*

Defendant's offer of proof concerning his past sexual relations with the alleged victim falls squarely within one of the Rule's exceptions. It is evidence of the alleged victim's "past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which rape or assault is alleged." Rule 412(b)(2)(B).

■ But the analysis does not end here; the Court must go on to consider whether evidence of a sexual relationship some three years prior to the alleged rape is relevant to consent and, if so, whether the probative value of this evidence outweighs the danger of its unfair prejudicial effect.

The government argues that evidence of a sexual relationship three years in the past is too remote in time to be probative on the consent issue presented here. Put simply, the government argues that just because she may have consented three

years ago does not mean she consented on the night in question. There is some force in this argument. Although Rule 412 does not include an explicit timeliness requirement, it seems clear that the temporal element must be taken into account in the weighing process called for in subsection (c)(3). Evidence of an isolated consent to engage in sex with an accused some ten years in the past would likely have no probative value, and more than a little potential for unfair prejudice. By contrast, evidence of consent to sex that is in closer proximity to the alleged rape may be very probative, as in the case of a recent or ongoing intimate relationship. From this, it follows that the application of Rule 412 must include a consideration of the temporal element. Legislative history confirms this. As one Congressman put it,

> ... In determining the admissibility of such evidence, the court will consider all of the facts and circumstances surrounding the evidence, such as the amount of time that lapsed between the alleged prior act and the rape charged in the prosecution. The greater the lapse of time, of course, the less likely it is that such evidence will be admitted.

124 Cong.Rec., p. H 11944 (October 10, 1978, remarks of Rep. Mann). This result is also consistent with many state rape shield statutes, including Virginia's.[5] *See* Va.Code 1950, § 18.2—67.7; *see also Graves v. Garraghty,* 618 F.Supp. 1348 (E.D.Va.1985) (alleged sexual contact between defendant and alleged victim occurring five to six years prior to the alleged rape was not "reasonably proximate to the offense," as required by the Virginia statute). Commentators, too, support this result. *See e.g.,* 23 C. Wright and K. Graham, *Federal Practice and Procedure* § 5389, pp. 603–4 (1980) (while Rule 412 does not contain a timeliness provision, "courts will undoubtedly take the temporal element into account in weighing the probative worth of the evidence.")[6]

---

5. For a summary of state rape shield statutes, *see* J. Tanford & A. Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U.Pa.L.Rev. 544 (1980).

6. In an explanatory footnote, *Wright & Graham* go on to note the following:
   Obviously the victim's willingness to engage in sex with the defendant at some remote time is less probative of her consent than would be

■ Given the relevance of the temporal element, the question here is whether alleged consensual relations three years prior to the alleged incident has probative value that outweighs the danger of unfair prejudice. This is a manifestly close question, but the Court ultimately concludes that the evidence should be admitted as having some probative value on the consent issue, but little, if any, risk of unfair prejudice. Defendant's claim of a prior sexual relationship with the alleged victim is central to the consent defense. Defendant's version of consensual sex at his home earlier in the evening is far more plausible in light of his claim of a prior relationship with the alleged victim. To be sure, the three-year period in issue here is certainly quite close to the indistinct boundary between some probative value and none. Evidence of a consensual relationship ten years in the past falls plainly on the non-probative side of the border. But at three years, the Court believes that in today's society the scale of probative value tips somewhat in the other direction. Also, the danger of unfair prejudice seems slight, if any. In today's society, evidence of a prior relationship with defendant does not, by itself, carry with it the pejorative implications of promiscuity and easy virtue. In this instance, the defendant will claim it, the alleged victim will deny it and the jury, as with the alleged rape itself, must decide whom to believe. *Davis v. Alaska,* 415 U.S. 308, 317, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974) (the jury is the "sole judge of the credibility of a witness.").

■ The constitutional perspective also points persuasively to admissibility. Rule 412 explicitly recognizes that evidence cannot be excluded in derogation of an accused's constitutional rights. Evidence otherwise excluded by the Rule must nonetheless be admitted if "constitutionally required." Rule 412(b), (c); *see also Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Although the Rule provides no guidance as to the meaning of the phrase "constitutionally required," it

seems clear that the Constitution requires that a criminal defendant be given the opportunity to present evidence that is relevant, material and favorable to his defense. *See United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (to establish 6th Amendment violation, defendant must show that he was precluded from offering evidence "material and favorable to his defense.") (footnote omitted); *Washington v. Texas,* 388 U.S. 14, 16, 87 S.Ct. 1920, 1921–22, 18 L.Ed.2d 1019 (1967) (6th Amendment violation occurs when defendant is arbitrarily deprived of "testimony ... relevant and material, ... and vital to the defense."); *United States v. Dorsey,* 16 M.J. 1, 5 (C.M.A.1983) ("criminal accused has the right to present evidence which is relevant, material, and favorable to his defense.") (citations omitted). The evidence offered here of defendant's prior sexual relationship with the alleged victim meets this test; it is relevant and material to his case and quite plainly favorable. In sum, therefore, defendant's evidence of his prior sexual relationship with the alleged victim is admissible on the issue of consent as provided for in Rules 412(b)(1) and (b)(2)(B). Admitting this evidence strikes a proper balance between protecting rape victims from humiliation or unfair loss of credibility as a result of public disclosure of their prior sexual activities and preserving an accused's right to present relevant, exculpatory evidence. *See* J. Weinstein, *Weinstein's Evidence* § 412–10 (1989); J. Tanford & A. Bocchino, *Rape Victim Shield Laws and the Sixth Amendment,* 128 U.Pa.L.Rev. 544 (1980).

### B. *The Alleged Victim's Past Sexual Behavior With Others*

■ The proffered evidence of the alleged victim's prior sexual behavior with defendant's acquaintance is not controlled by Rule 412. It is not evidence of "past sexual behavior with persons other than the accused ... upon the issue of whether

---

an incident two months before. However, even short time periods may sharply reduce probative value if there are other intervening

events; e.g., the victim has now married or entered a nunnery. *Id.* at 604.

the accused was or was not, with respect to the alleged victim, the source of semen or injury." Rule 412(b)(2)(A). As such, it is "ordinarily inadmissible under Federal Rule of Evidence 404." *United States v. Driver*, 581 F.2d 80, 81 (4th Cir.), *cert. denied*, 439 U.S. 987, 99 S.Ct. 582, 58 L.Ed.2d 660 (1978) (citing *McLean v. United States*, 377 A.2d 74, 77–78 (D.C.App. 1977)). But a different result obtains where, as here, the evidence is offered instead, ostensibly, to show defendant's state of mind. *Doe v. United States*, 666 F.2d 43, 48 (4th Cir.1981) teaches that Rule 412 was not intended to exclude evidence of an alleged victim's past sexual behavior with others "when offered solely to show the accused's state of mind."[7] The admissibility of such evidence, according to *Doe*, is governed by "the Rules of Evidence dealing with relevancy in general." *Id.*

The government argues that *Doe* is wrongly decided and should not be followed. Because the evidence is ultimately inadmissible on Rules 402 and 403 grounds, it is unnecessary to reach the merits of this argument[8] or, as a threshold matter, to consider whether the argument is properly addressed to this Court.

■ Close scrutiny of the evidence offered by defendant's acquaintance reveals its lack of probative value as well as its circumstantial potential for unfair prejudice. Defendant's claim that this evidence helps illuminate his state of mind in any relevant way is wholly unpersuasive. Nowhere does plaintiff describe precisely what the proffered evidence discloses about his state of mind. Evidence establishing that in the week prior to the alleged

incident defendant learned that his friend and the alleged victim had recently engaged in consensual sex over a three-day period seems, at most, to suggest that defendant's state of mind toward the alleged victim was that she was a woman of easy virtue. Such state of mind is neither relevant, nor exculpatory. In proscribing rape, the law makes no distinction based on an alleged victim's virtue or lack of virtue. It matters not whether a rape victim has chosen in life to follow Mother Teresa's inspiring example or the less uplifting examples of Catherine the Great[9] or Polly Adler[10].

■ In sum, the knowledge of his friend's alleged recent consensual sex with the alleged victim illuminates nothing relevant about the defendant's state of mind on the night of the alleged rape. Significantly, however, such evidence is fraught with the danger of unfair prejudice because it suggests to the jury that the alleged victim is promiscuous and therefore not worthy of either belief or protection from rape. Such a suggestion is flatly contrary to law and unfairly prejudicial. This point was put well by the Eighth Circuit in a decision cited by the Fourth Circuit in *Doe:*

> Evidence of a rape victim's unchastity, whether in the form of testimony concerning her general reputation or direct or cross-examination testimony concerning specific acts with persons other than the defendant, is ordinarily insufficiently probative either of her general credibility as a witness or of her consent to intercourse with the defendant on the particular occasion ... to outweigh its highly prejudicial effect.

7. *But see, United States v. Dorsey*, 16 M.J. 1 (1983) (admitting extrinsic evidence of alleged victim's sexual behavior with defendant's roommate to show alleged *victim's* ashamed state of mind as motivation for lodging rape complaint against defendant.)

8. The government argues that *Doe's* state of mind exception to the Rule 412 prohibition is an exception that swallows or eviscerates that salutary prohibition. It is easy, the government contends, to invoke this exception and thereby gain admission of an alleged victim's reputation

through the back door after Rule 412 has closed the front door. Although these arguments are not without some force, the Fourth Circuit doubtless intends careful application of the state of mind exception to ensure that it is not used to avoid the Rule.

9. W. Durant and A. Durant, *Rousseau and Revolution* 444–446 (1967).

10. P. Adler, *A House is Not a Home* (1953).

*Doe,* 666 F.2d at 47 (*citing United States v. Kasto,* 584 F.2d 268 (8th Cir.), *cert. denied,* 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1979)).[11]

It is worth noting that a different result might obtain in cases where an alleged victim's prior sexual behavior bears directly on defendant's state of mind with respect to a disputed issue of consent. For example, evidence that defendant knows that an alleged victim has shown a preference for combative sex in her prior sexual relationships with others, may be relevant in a case where the issue of consent is clouded by defendant's contention that he reasonably interpreted an alleged victim's protestations and struggles as invitations rather than denials of consent. Of course, nothing of the sort is alleged to have occurred here. On the contrary, this is a case where evidence of an alleged victim's alleged past sexual relationship with one other person, even though known to defendant, sheds no relevant exculpatory light on defendant's state of mind, but instead has the effect of unfairly prejudicing the jury against the alleged victim. Accordingly, the Court concludes the evidence of the alleged victim's alleged consensual sexual relationship with defendant's friend is inadmissible.

█ Of course, nothing in this Memorandum Opinion, or in the Order that has issued, is intended to limit evidence the parties may wish to offer for a proper purpose, including impeachment. Finally, in accord with *Doe,* the Court notes that the alleged victim has the right to appeal an adverse Rule 412 ruling. *See Doe,* 666 F.2d at 46 ("Without the right to immediate appeal, victims aggrieved by the court's order will have no opportunity to protect their privacy from invasions forbidden by [Rule 412]".)

For the reasons stated herein, defendant's Rule 412 motion is GRANTED in

part and DENIED in part. An appropriate Order has issued.

---

11. Although *Kasto* was decided before Rule 412 was promulgated, it continues to be cited as authoritative in the application of the Rule. The *Kasto* court firmly rejected the contention that an accused has a constitutional right to elicit all evidence of a victim's prior sexual behavior. *Kasto* held that the Constitution limits that right to relevant evidence. 584 F.2d at 272.